BANK ONE TRUST COMPANY, N.A., Appellee,

v.

SCHERER, Appellant; Scherer et al., Appellees.

Bank One Trust Company, N.A., Appellee,

v.

Scherer et al., Appellees; Wiles, Appellant.

[Cite as *Bank One Trust Co., N.A. v. Scherer,* 176 Ohio App.3d 694, 2008-Ohio-2952.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 07AP–186 and 07AP–350.

Decided June 17, 2008.

696

Zeiger, Tigges & Little L.L.P., John W. Zeiger, Steven W. Tigges, and Stuart G. Parsell, for appellee Bank One Trust Company, N.A.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., James M. Wiles, and Dale D. Cook, for appellant Ronald E. Scherer Sr.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Michael L. Close, and Dale D. Cook, for appellant James M. Wiles.

FRENCH, Judge.

{¶ 1} In these consolidated cases, Ronald E. Scherer Sr. ("Ronald"), defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, in which the court found him in contempt of court. James M. Wiles, appellant, appeals from a judgment of the same court finding him in direct criminal contempt. This court consolidated the appeals for purposes of briefing and argument.

{¶ 2} According to the complaint filed by Bank One Trust Company, N.A., plaintiff-appellee, since 1979, Bank One was the trustee for a trust agreement

formed by Roger L. Scherer ("Roger"). Roger died in 1982. Pursuant to the trust agreement, Bank One was to form three trusts: one for Roger's son, Ronald; one for Roger's daughter, Linda Scherer Talbott; and one for Roger's surviving spouse, Betty J. Scherer. The trusts were granted cash, real estate, and/or interests in Roger's magazine distribution businesses. After Roger's death, the companies in the trust continued operating into the mid to late 1990s, when many of the trust companies ceased operations or consolidated. One of these businesses was a publication distributor, United Magazine Company ("Unimag"). Ronald eventually commenced a lawsuit in New York on behalf of Unimag against another distributor.

{¶ 3} On September 14, 2004, Bank One filed an action for declaratory judgment and final accounting in the Franklin County Probate Court against Ronald, Linda, Betty, and several other defendants (collectively, "defendants"), all of whom had interests in the various trusts. On October 4, 2004, defendants filed a motion to dismiss. On December 10, 2004, Bank One filed a motion for production of documents. On February 10, 2005, the court denied the motion to dismiss. On April 21, 2005, Bank One filed a motion to compel. On September 30, 2005, the trial court stayed discovery. On December 15, 2005, Bank One filed a motion to compel discovery. On December 20, 2005, the court granted the motion to compel.

{¶ 4} On December 22, 2005, the probate court, with regard to the motion to compel, ordered that the failure of defendants to comply with the order by January 13, 2006, would result in a finding of civil contempt of court, and defendants would be charged $250 per day until there was compliance with the discovery requests or the court ordered otherwise. Wiles became counsel for Ronald on December 22, 2005, and subsequently the original trial judge recused himself from the action.

{¶ 5} On April 12, 2006, the trial court ordered Ronald to produce numerous documents. On July 25, 2006, Bank One filed a motion to compel, which the trial court granted on August 30, 2006. On October 2, 2006, the court held a hearing, at which the court ordered a show-cause hearing for October 5, 2006. On January 4, 2007, the court issued findings of fact and conclusions of law, finding that Ronald had willfully disobeyed the court's discovery orders. In its February 1, 2007 judgment entry, the trial court reduced to judgment the $250 per day for discovery noncompliance, beginning January 13, 2006, and ordered Ronald to pay $74,750 to Bank One as well as $250 per day for each day the judgment remained unpaid. Ronald appeals this judgment.

{¶ 6} As we discuss in detail below, the court held a hearing on April 12, 2007. At this hearing, an argumentative discourse took place between the trial court and Wiles. The trial court found Wiles in direct criminal contempt of court and

sentenced him to ten days' incarceration. The trial court journalized the finding in an order issued on April 17, 2007. Wiles appeals this judgment. Wiles also has filed a motion to strike Bank One's brief, arguing that Bank One has no standing to enforce a summary finding of criminal contempt. In the alternative, Wiles asks us to strike a footnote in Bank One's brief.

{¶ 7} Ronald asserts the following assignments of error:

1. The Trial Court erred in holding Ronald Scherer, Sr. guilty of indirect criminal contempt in the absence of a written charge entered on the journal.

2. The Trial Court erred in finding no reasonable doubt that Ronald Scherer Sr. willfully disobeyed a court order and in finding him guilty of criminal contempt.

{¶ 8} Wiles asserts the following assignments of error:

1. The Trial Court abused its discretion in summarily convicting James M. Wiles of direct criminal contempt of court on April 12, 2007.

2. The Trial Court abused its discretion in summarily imposing an excessive and inappropriate jail sentence for the direct criminal contempt.

{¶ 9} Ronald argues in his first assignment of error that the trial court erred when it found him guilty of indirect criminal contempt in the absence of a written charge entered on the journal. Although a trial court's decision to impose discovery sanctions will not be disturbed on appeal absent an abuse of discretion, *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 6 OBR 496, 453 N.E.2d 700, Ronald's first assignment of error involves questions of law, which we review de novo. *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh* (1998), 129 Ohio App.3d 255, 261, 717 N.E.2d 763.

{¶ 10} Ronald contends that R.C. 2705.03 requires a charge of contempt to be entered on the journal. R.C. 2705.03 provides:

In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel.

R.C. 2705.02(A) provides that a person guilty of disobedience of, or resistance to, a lawful order of a court may be punished as for a contempt. However, we find that the requirements of R.C. 2705.03 do not apply to the circumstances involving Ronald, based on Civ.R. 37(B)(2)(d) and our decision in *Williams v. Cordle* (Feb. 8, 1996), Franklin App. No. 95APF08–978, 1996 WL 52894.

{¶ 11} Civ.R. 37(B)(2) provides:

If any party or an officer, director, or managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made

under subdivision (A) of this rule and Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

* * *

(d) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

{¶ 12} In *Williams,* we discussed the relationship between R.C. 2705.03 and Civ.R. 37(B)(2)(d). In that case, the mother in a child-support-modification proceeding filed a motion to compel discovery regarding interrogatories and a request for production of documents. The trial court ordered the father to comply with the discovery requests. The mother then filed a motion for contempt based on the father's failure to comply with the court's order. A magistrate held a hearing on the motion, after which the trial court adopted the magistrate's recommendation that the father be found in contempt, pursuant to Civ.R. 37(B)(2), for failing to obey the court's previous discovery orders and that the father be sentenced to 30 days' incarceration, with the sentence suspended if the father purged himself of the contempt by providing the mother with the requested discovery by a certain date and paying her attorney fees.

{¶ 13} On appeal, the father in *Williams* argued that the trial court erred by finding him in contempt pursuant to Civ.R. 37(B)(2)(d) and imposing penalties on him. The father contended that before a trial court could treat noncompliance with a discovery order as a contempt of court pursuant to Civ.R. 37(B)(2)(d), it had to first comply with the procedural safeguards listed in R.C. 2705.03 for contempt proceedings brought under R.C. 2705.02. However, this court rejected the father's contention, concluding that "[n]othing in the language of Civ.R. 37(B)(2)(d) indicates a court must comply with the procedural requirements of R.C. 2705.03 before it treats a party's noncompliance with a discovery order as a contempt of court." Therefore, we held that the trial court did not err when it found the father in contempt of court without complying with the mandates of R.C. 2705.03.

{¶ 14} The current case presents the same basic facts. Here, as in *Williams,* Ronald failed to comply with the trial court's order to produce requested discovery, and the trial court found Ronald in contempt under its powers to invoke discovery sanctions under Civ.R. 37(B)(2)(d), not under R.C. 2705.03. Specifically, the trial court in this case found, "Defendant Ronald E. Scherer, Sr. is hereby held in contempt of court pursuant to Civil Rule 37(B)(2)(d) for his repeated and willful disobedience of the Court's prior discovery orders." Based on our prior analysis in *Williams,* there is no requirement that contempt as a discovery sanction, pursuant to Civ.R. 37(B)(2)(d), comply with the requirements

of R.C. 2705.03. Civ.R. 37(B)(2)(d) makes no mention of R.C. 2705.03, and we can find no authority to support Ronald's contention that a trial court must comply with R.C. 2705.03 when it is ordering discovery sanctions under the powers granted in Civ.R. 37(B)(2)(d).

{¶ 15} Ronald makes several counterarguments. Ronald first contends that the language in R.C. 2705.03 makes its requirements mandatory, pointing to the word "shall." However, R.C. 2705.03 also indicates that the requirements apply only "[i]n cases under section 2705.02 of the Revised Code." Here, the trial court did not proceed under the contempt powers granted in R.C. 2705.02 but proceeded under the discovery-sanctioning powers delineated in Civ.R. 37(B)(2).

{¶ 16} Ronald also counters that *Williams* is factually distinguishable from the present circumstances for two reasons: (1) *Williams* involved a sanction for civil contempt that could be purged, while this case involves an unconditional fine and (2) the party held in contempt in *Williams* admitted violating the court order, while Ronald always maintained that he had complied with all discovery orders. Neither of these distinguishing facts has any impact on the crux of our holding in *Williams* that Civ.R. 37(B)(2) simply fails to give any indication that R.C. 2705.03 must be followed when ordering a discovery sanction specifically pursuant to Civ.R. 37(B)(2) rather than R.C. 2705.03.

{¶ 17} We also note that as part of his argument under his first assignment of error, Ronald asserts that because this case involved a criminal contempt, he was entitled to heightened procedural due process protections, including the type of notice provided by R.C. 2705.03 and timely notice. However, the type of contempt has no bearing on our analysis in *Williams* and our conclusion that Civ.R. 37(B)(2) does not require compliance with R.C. 2705.03. Ronald's assignment of error also does not specifically assert that he was not given adequate and timely notice but only asserts that he was entitled to a written charge entered on the journal. For these reasons, we conclude that the trial court did not err in finding Ronald in contempt in the absence of a written charge pursuant to R.C. 2705.03. Accordingly, we overrule Ronald's first assignment of error.

{¶ 18} Ronald argues in his second assignment of error that the trial court erred when it found beyond reasonable doubt that he willfully disobeyed a court order and found him guilty of criminal contempt. Contempt may be characterized as either direct or indirect. *Sansom v. Sansom,* Franklin App. No. 05AP–645, 2006-Ohio-3909, 2006 WL 2130717, ¶ 23, citing *Byron v. Byron,* Franklin App. No. 03AP–819, 2004-Ohio-2143, 2004 WL 894600, ¶ 12. Direct contempt occurs in the presence of the court and obstructs the administration of justice. R.C. 2705.01. Indirect contempt involves behavior that occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders. *Byron,* citing *State v. Drake* (1991), 73 Ohio App.3d 640, 643, 598

N.E.2d 115. Thus, in determining whether the contempt is direct or indirect, we focus on the action of the contemnor. Here, Ronald failed to produce discovery as required by the trial court's prior order. Ronald's act occurred outside the presence of the court and therefore must be characterized as indirect contempt.

{¶ 19} Courts may further characterize contempt as criminal or civil, depending upon the nature of the contempt sanctions. Criminal contempt imposes sanctions that are punitive in nature and are designed to punish the party for past failures to comply with the court's order. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 555, 740 N.E.2d 265. Criminal contempt usually involves mandatory incarceration, and the party found to be in contempt usually has no opportunity to avoid the incarceration. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 18 O.O.3d 446, 416 N.E.2d 610. Civil contempt is remedial or coercive in nature and will be imposed to benefit the complainant. *Delawder v. Dodson,* Lawrence App. No. 02CA27, 2003-Ohio-2092, 2003 WL 1950371, ¶ 11. Any sanction imposed by the court for civil contempt must provide the contemnor with an opportunity to purge himself or herself of the contempt. Id. at ¶ 10. Thus, in determining whether the contempt is civil or criminal, we focus on the purpose of the sanction, i.e., whether the purpose is punitive or remedial.

{¶ 20} Here, the trial court indicated in its findings of fact and conclusions of law:

The $250 daily fine set forth in Judge Belskis' December 22, 2005 Entry for Defendants' discovery noncompliance is hereby reduced to Judgment in favor of the Trustee and against Defendant Ronald E. Scherer, Sr. in the amount of $74,750 plus an additional $250 for each day the Judgment remains unpaid.

{¶ 21} Ronald characterizes the contempt as criminal because it was an unconditional punishment for past misconduct; it had no remedial or coercive purposes, given that it was not conditioned on the production of any documents; the trial court gave him no opportunity to purge; and the court used the standards of "reasonable doubt" and "willfulness," which are necessary only for criminal-contempt findings. However, Bank One characterizes the contempt as civil because the court's judgment simply reduced to judgment the prior $250 per day civil-contempt fine that had been previously imposed on December 22, 2005, for Ronald's discovery noncompliance; the punishment was remedial and coercive; the punishment was for Bank One's benefit; the contempt judgment indicated that it was entered pursuant to Civ.R. 37(B)(2)(d), which is a civil, not criminal, rule; Ronald's repeated discovery violations harmed Bank One; and the court entered the fine "in favor of" Bank One as compensation for its resulting losses.

{¶ 22} Both parties raise credible arguments. However, the trial court's order clearly incorporates the "reasonable doubt" and "willfulness" standards, which are only applicable to criminal contempts. Further, the trial court did not give Ronald any opportunity to purge the lump-sum portion of the contempt penalty, an opportunity required when imposing a civil-contempt sanction.

{¶ 23} Nevertheless, it is not necessary for this court to determine conclusively whether the contempt was civil or criminal. While Civ.R. 37 is a civil rule, the sanctions under Civ.R. 37(B), in general, appear to be punitive. Civ.R. 37(B)(2)(d) does not speak to either civil or criminal sanctions. While most direct contempts will be punished with a criminal sanction and most indirect contempts with a civil sanction, this is not always true. As we stated previously, in the civil/criminal distinction, the focus is on whether the purpose of the sanction is punitive or remedial. In the situation before us, while the trial court's judgment is not entirely clear, the purpose appears to be punitive. Again, when used in the context of Civ.R. 37, where the sanctions under Civ.R. 37(B) are generally punitive, such a sanction for contempt would not be an abuse of discretion. As indicated above, a trial court's decision to impose discovery sanctions will not be disturbed on appeal absent an abuse of discretion. *Toney.*

{¶ 24} Ronald's main argument is that Bank One's original discovery request was enormously vast, encompassing over 40 different categories of documents, records from the past 20 years, and records from 12 different corporations. Ronald argues that he testified on October 5, 2006, that he spent "a lot" of time looking for the documents, defendants produced 8,507 documents, and Ken Dean, an accountant for some of the interested companies, averred that there were extraordinary attempts to locate documents, all of which demonstrate Ronald's attempt to comply with the court orders. Ronald also claims that the information sought by Bank One was included in the documents already provided, but Bank One refused to examine those documents. Specifically, Ronald asserts that an accountant could have examined the general ledgers to provide information as to assets.

{¶ 25} We find Ronald's contentions unavailing. In its decision, the trial court explained in great detail Ronald's discovery failings, which Ronald does not contest in any specific manner. Specifically, the trial court set forth the following findings to support its judgment. On December 10, 2004, Bank One served Ronald with a request for production of documents. Bank One filed motions to compel discovery in April and December 2005. On December 20, 2005, the trial court found that Ronald had failed to comply with the discovery requests and ordered him to comply immediately with the requests. On December 22, 2005, the trial court set a deadline of January 13, 2006, for Ronald's compliance with Bank One's discovery requests; failure to comply would result in a $250 per day

fine. On March 17, 2006, the court admonished Ronald at a status conference for his continued failure to comply with the prior two discovery orders and ordered Bank One to prepare an entry setting forth the specific categories of documents that Ronald had failed to produce. On April 4, 2006, Ronald filed objections to the proposed Bank One entry, asserting that he would not produce documents from the Unimag lawsuit because Bank One could get these public records online. The court found that Ronald misrepresented that the documents were publicly available, as some of the most critical documents were placed in sealed envelopes and designated as confidential. In April 2006, the court found Ronald had still failed to comply with all of Bank One's discovery requests, but it gave him yet another chance to produce the documents by April 27, 2006. The trial court explicitly identified the categories of documents Ronald was required to produce. On April 25, 2006, Bank One filed a second request for production of documents and first set of interrogatories. When Ronald failed to provide Bank One with the requested discovery, Bank One had to file another motion to compel, which the trial court granted on August 31, 2006. In its entry, the trial court found that Ronald was "blatantly flouting" the discovery process and was acting in bad faith by failing to make a good-faith effort to answer any of the 46 interrogatories propounded upon him. The court found that Ronald's responses were thinly veiled efforts to avoid providing any information and were designed to frustrate the discovery process. The court ordered Ronald to comply with Bank One's discovery requests by September 21, 2006, and scheduled a hearing for October 2, 2006. The court found that despite the prior four orders, Ronald failed to provide the following three categories of documents that had been requested since December 2004: (1) documents relating to transfers of over $3 million of assets from trust-owned companies, (2) documents relating to missing rents for trust-owned real estate, and (3) documents from the Unimag lawsuit. The court then endeavored to explicitly list the types of documents from each of these categories and cited Ronald's testimony from the show-cause hearing to support its finding that these documents either should have still been in existence or were improperly destroyed by Ronald in contemplation of litigation.

{¶ 26} Ronald's arguments under his second assignment of error are general and broad. He initially contends that the fact that he produced over 8,500 documents demonstrates his good-faith efforts to comply with the court's orders. Although it is not disputed that defendants produced thousands of documents, Ronald's production of those documents has no impact on his failure to satisfy other outstanding requests. The trial court cited specific types of documents that Ronald repeatedly refused to provide, and these documents may well have contained damaging evidence while the produced documents were harmless, rendering meaningless any good-faith claim by Ronald based upon his partial compliance.

{¶ 27} Further, although Ronald complains that the requests for documents covered 12 different corporations from 1996 to 2004, the trial court noted that the underlying documents for the vast majority of the transactions at issue would have necessarily been created in the few years prior to Bank One's declaratory-judgment action and should still be in existence. Ronald also does not address the trial court's conclusion that he wrongfully destroyed documents.

{¶ 28} In addition, the trial court predicated its contempt finding in part on Ronald's misrepresentation that all of the pleadings from the Unimag lawsuit were public record and available online, when many documents were actually sealed and deemed confidential. Ronald admitted at the show-cause hearing that he failed to produce perhaps "thousands" of documents from the Unimag lawsuit that were readily available in Ronald's office building.

{¶ 29} Also, Ronald's argument that the information sought by Bank One was available by examining documents already produced does not in any way relieve him of his responsibility to comply with Bank One's requests. Ronald cites no authority for the proposition that a party need not produce documents pursuant to a valid request when the party believes the information sought in the request is contained in other documents already produced. In short, Bank One properly requested certain documents, and Ronald was legally bound to provide them regardless of his own opinion that Bank One could locate the same information by compiling the information gleaned from other documents. Therefore, while the sanction is harsh, we find that the evidence supports the trial court's finding that Ronald willfully disobeyed the court's four discovery orders and its imposition of a punitive sanction. Accordingly, we overrule Ronald's second assignment of error.

{¶ 30} Turning to Wiles's appeal, as an initial matter, we consider Wiles's motion to strike Bank One's brief. In support, Wiles argues that Bank One lacks standing to participate in the appeal.

{¶ 31} The issues on appeal relate to the trial court's finding of direct criminal contempt against Wiles. The Ohio Supreme Court has held that "contempt is essentially a matter between the court and the person who disobeys a court order or interferes with court processes." *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 17, 520 N.E.2d 1362. As such, as Wiles asserts, "there is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." Id. at 14, 520 N.E.2d 1362.

{¶ 32} The issue before us is different, however. Here, Bank One does not seek to invoke the jurisdiction of this court in order to review the trial court's finding of contempt. Rather, it seeks only to file a brief in support of that finding

and to participate in the appeal. Whether we consider Bank One as a party in the contempt appeal or just a party in the underlying matter, we find their participation helpful. Nevertheless, we agree with Wiles that footnote 1 on page 9 of Bank One's brief attempts to present matters not part of the trial court record. Therefore, we deny Wiles's motion to strike Bank One's brief but grant Wiles's alternative request to strike footnote 1 from that brief.

{¶ 33} In his first assignment of error, Wiles argues that the trial court abused its discretion when it summarily convicted him of direct criminal contempt of court. The April 12, 2007 hearing was a show-cause hearing on Bank One's motions for contempt against two of Ronald's witnesses. Before the court could hear argument on the motions, Wiles interrupted. He asked if all future depositions could occur before a magistrate. He also questioned the purpose of the hearing because the two witnesses were present at the hearing and available for deposition. The following dialogue then occurred:

THE COURT: Mr. Wiles, please sit down.

MR. WILES: Mr. Dean and Mr. Thompson are in the courtroom today.

THE COURT: Mr. Wiles, please sit down. You just demonstrated why we are here today, because we can't accomplish anything in this case without your interruptions.

Now there is a motion. The motion was set today. I called the motion. And it is inappropriate for you to stand up and tell me what to do before I hear the motion. But what you just did demonstrates why we are here, and that is relatively simple. We cannot accomplish anything in this case without your inappropriate interruption, interference, and attempt to control everything.

Now I am going to conduct this hearing. You are not. Is that clear, Mr. Wiles?

MR. WILES: Whatever you say, Judge.

{¶ 34} At that point, Bank One's counsel described at length his difficulty in conducting discovery. The motions before the court included motions for contempt and writs of attachment against two witnesses for their failure to honor subpoenas. Bank One's counsel described extensive efforts to depose the witnesses, including the court's prior involvement and instructions for the witnesses to appear. Counsel also described "the constant improper objections and interruptions and personal attacks on me and my partner that have happened this week." Counsel read portions of deposition transcripts, which recorded Wiles's frequent interruptions and instructions to the witnesses not to answer questions. Bank One's counsel presented three alternative remedies to address the discovery difficulties. He ultimately recommended that the court find the witnesses in

contempt but asked the court to hold any final remedy in abeyance until after the court had ruled on other discovery-related matters.

{¶ 35} The trial court then gave Wiles an opportunity to respond but interrupted when Wiles suggested that they had been trying to work out the discovery-related issues. The court stated that it was "not willing to sit here and listen to how you have bent over backwards to cooperate with everybody in the last three years." Wiles pointed out the scheduling difficulties for the two witnesses and their lack of availability. Bank One's counsel responded briefly.

{¶ 36} The transcript then reflects 11 full pages of uninterrupted comments from the trial court. These comments consist primarily of harsh criticism of Wiles's behavior over the course of the entire case. The court's criticism included the following:

> In 32 years as a lawyer and 20 years as a judge, I have never seen less cooperation. It is just absolutely absurd. Mr. Wiles' conduct throughout has been reprehensible, inexcusable and contemptible. He has demonstrated clearly no regard for the law, no regard for the Court, and very little for his own clients. That is a sad, sad scenario.
>
> \* \* \*
>
> In my view, Mr. Wiles has conducted himself in no way like an officer of this court. And frankly, he has demonstrated himself to be worthy of no veracity, deserves no belief from this Court.
>
> \* \* \*
>
> Again, in 32 years of practicing law, I have never seen depositions so abused, their purposes frustrated as in Mr. Wiles' case. And I can only conclude because of his continuing, flagrant efforts that it is intentional. \* \* \*

{¶ 37} The court characterized Wiles's behavior as "a disgrace," "unprofessional," and "rude." The court did not hold the two witnesses in contempt because the court believed that they were acting "at the direction of either Mr. [Ronald] Scherer or Mr. Wiles or both." However, the court excluded their testimony on certain issues.

{¶ 38} The court then raised the issue of Linda Scherer's testimony. The court restated its concern that Linda and Ronald have competing interests and that Wiles should not be representing both of them. At this point, the following dialogue occurred:

> THE COURT: And she is sitting at that deposition represented by Ron Scherer's attorney. Is it your concept, Mr. Wiles, that that is appropriate?
>
> MR. WILES: Yes, it is, Your Honor.
>
> THE COURT: Why is it? Will you explain that to me?

MR. WILES: I am not in a position to explain anything to you at this point.

THE COURT: What does that mean?

MR. WILES: Just what I said. I did everything that was appropriate. I don't think that I have any obligation to go any further, especially after the way I have just been berated. And I apologize, Your Honor, but that is all you are going to hear from me.

THE COURT: So you're saying to me you are not going to respond; is that it?

MR. WILES: I think that is what I just said to you.

THE COURT: Mr. Scherer—or Mr. Wiles, will you stand up, please?

MR. WILES: I am standing up, Your Honor.

THE COURT: How long have you been a lawyer?

MR. WILES: Considerably longer than you, Your Honor.

THE COURT: Is that right? Well, you know, Mr. Wiles, I have tried to be good to you, and it didn't work. And throughout this case you continue to say inappropriate things to me, like you just did, "and considerably longer than I." And I don't think so. I think you got out of Ohio Northern about 1970 and I got out in '74. And to that extent I will agree with you; but I think I know what is a conflict of interest and not.

But you have demonstrated a total contempt for this Court, contempt for the law, and disregard for your clients. You have continued to say things like you have just said to me. I find you in criminal contempt of this Court, and I want a deputy in here. I will remand you to the custody of the Franklin County jail.

I have had enough snotty remarks out of you, and I am not going to be hearing any more. Deputy, take him into custody. I find him in direct contempt and I sentence him to ten days in the Franklin County jail.

{¶ 39} As we explained previously, direct contempt occurs in the presence of the court and obstructs the administration of justice. R.C. 2705.01. Further, criminal contempt imposes sanctions that are punitive in nature. *Corn*, 90 Ohio St.3d at 555, 740 N.E.2d 265. R.C. 2705.01 provides that a court may summarily punish a contemnor for direct contempt, and due process does not require that the court grant the contemnor a hearing. *In re Purola* (1991), 73 Ohio App.3d 306, 312, 596 N.E.2d 1140. The determination of the character of conduct that constitutes direct contempt of court is within a trial court's sound discretion; thus, absent an abuse of discretion, an appellate court will not disturb a trial court's contempt determination. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786, 790, 673 N.E.2d 182. Because the purpose of contempt proceedings is to uphold the dignity and authority of the courts, great deference is given to the judgment of the trial judge. *Denovchek*, 36 Ohio St.3d at 15, 520 N.E.2d 1362.

{¶ 40} While a finding of contempt is within the discretion of the court, to sustain a conviction of criminal contempt the elements of the offense must be proven beyond a reasonable doubt. *Brown.* The elements include intent to defy the court and conduct that poses an imminent threat to the administration of justice. *Catholic Social Serv. of Cuyahoga Cty. v. Howard* (1995), 106 Ohio App.3d 615, 666 N.E.2d 658. To justify a finding of summary contempt and imposition of summary sanction, the contumacious act must pose a threat that requires immediate sanction to preserve the dignity and very functioning of the court. *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 64 O.O.2d 129, 299 N.E.2d 686 (Brown, J., dissenting).

{¶ 41} Applying these principles here, while Wiles focuses on the dialogue that occurred immediately prior to the court's finding of contempt, consideration of the entire April 12, 2007 transcript is instructive. The full transcript shows that Wiles interrupted and attempted to sidetrack the hearing from the beginning, a tactic that drew words of caution from the court. It also shows that the court's frustration with Wiles preceded the hearing. While Wiles's conduct at the hearing itself undoubtedly made matters worse, in the context of direct criminal contempt, where punishment is imposed summarily, we must ensure that the trial court's direct-contempt finding relates to conduct that required immediate response. *In re Wingrove,* Washington App. No. 02CA4, 2003-Ohio-549, 2003 WL 246079, citing *In re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682.

{¶ 42} To be fair to Wiles, the court's prolonged criticism was very direct and extremely harsh. It would have left any lawyer reluctant to speak. Nevertheless, we cannot conclude that the trial court's diatribe justified Wiles's refusal to answer questions concerning his representation of Ronald and Linda Scherer or his disrespectful comments to the court. As the Supreme Court of Ohio stated in *State v. Wilson* (1972), 30 Ohio St.2d 312, 314–315, 59 O.O.2d 379, 285 N.E.2d 38:

> The integrity of the judicial process demands total deference to the court, particularly on the part of its officers. Respect for the law and obedience to the orders and judgments of the tribunals by which it is enforced lies at the very foundation of our society. No amount of provocation on the part of the judge can be permitted to excuse counsel from the obligation of his oath of office ("I will maintain the respect due to courts of justice and judicial officers"); to excuse him from his duties imposed by the Code of Professional Responsibility; or to condone the acts of counsel if in fact they are in themselves contemptuous.

{¶ 43} Here, Wiles showed no deference to the trial court. From the beginning of the hearing, he sought to obstruct the proceeding. While undoubtedly

offended by the court's criticisms, Wiles still had a duty to answer the court's questions, particularly given the importance of the issues raised. And his "[c]onsiderably longer than you" remark was simply inappropriate. For these reasons, we conclude that the trial court did not abuse its discretion by finding Wiles in direct criminal contempt. Accordingly, we overrule Wiles's first assignment of error.

{¶ 44} In his second assignment of error, Wiles asserts that the court erred by imposing punishment summarily and that the ten-day jail sentence was excessive. On the former issue, we conclude that the court did not err by imposing punishment summarily. Ohio courts have held that a finding of direct criminal contempt does not necessarily justify the imposition of punishment summarily. Instead, a court must use its power of summary contempt cautiously and should restrict that power "to activity that threatens the integrity or the very functioning of the judicial process." *Cincinnati*, 35 Ohio St.2d at 213, 64 O.O.2d 129, 299 N.E.2d 686 (Brown, J., dissenting). In other words, there must exist an immediate threat that requires immediate correction. See *In re LoDico*, Stark App. No. 2003–CA–00446, 2005-Ohio-172, 2005 WL 100953, ¶ 41–45.

{¶ 45} Here, Wiles argues that there was no need for summary punishment. In his view, his "innocuous statements" did not obstruct the hearing because the hearing had already concluded, he provided a partial response to the court's questions, and the remarks were not "made in a disrespectful or obstreperous manner." We disagree with Wiles's characterization of the remarks and the proceedings.

{¶ 46} Wiles's interruptions began at the beginning of the proceedings, so they were not limited to the end of the hearing. In any event, while the trial court had made its contempt finding concerning the two witnesses at issue by the time Wiles refused to answer and made his disrespectful remarks, the court had not concluded the hearing, nor had the parties resolved the issues before it. There was lengthy discussion of the other discovery-related difficulties still at issue, including Wiles's representation of both Ronald and Linda Scherer. It was appropriate for the court to engage Wiles in a discussion about that representation at that time, and Wiles's refusal to discuss the matter completely obstructed the court's ability to understand and resolve it. Therefore, we conclude that the court did not err by imposing punishment summarily.

{¶ 47} However, we agree with Wiles that the ten-day jail sentence was excessive. While R.C. Chapter 2705 does not limit a court's authority to impose a sentence for direct contempt, Ohio courts have found that "the punishment issued must be reasonable and in proportion to contemptuous act." *Warren v. Satterlee*, Trumbull App. No. 2005–T–0010, 2006-Ohio-1460, 2006 WL 763125,

¶ 21, citing *State v. King*, Cuyahoga App. No. 80958, 2002-Ohio-7228, 2002 WL 31875966, ¶ 12, and *State v. Sindell* (Apr. 4, 1979), Lorain App. No. 2745, 1979 WL 207604. An appellate court will not reverse the punishment imposed by the trial court in a direct contempt absent an abuse of discretion. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 207, 15 O.O.3d 221, 400 N.E.2d 386; *Satterlee* at ¶ 21, citing *King* at ¶ 12.

{¶ 48} In *Wilson*, the Supreme Court affirmed an appellate court's holding that affirmed the trial court's imposition of direct criminal contempt and reversed the trial court's imposition of a three-day sentence. In *Satterlee*, the Eleventh District Court of Appeals affirmed a finding of direct criminal contempt but reversed the three-day sentence imposed. In *In re Gilbert* (Dec. 16, 1993), Cuyahoga App. No. 64299, 1993 WL 526788, the Eighth District reduced a punishment of five days and $1,000 to $500.

{¶ 49} Under the facts at issue here, we conclude that the ten-day sentence is unreasonable and an abuse of discretion. While we have concluded that Wiles's conduct was contemptuous, ten days in jail is not in proportion to that conduct or its effect on the proceedings. Therefore, we sustain Wiles's second assignment of error.

{¶ 50} In conclusion, in case No. 07AP–186, we overrule Ronald's first and second assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

{¶ 51} In case No. 07AP–350, we deny Wiles's motion to strike Bank One's brief, except that we strike footnote 1 on page 9 from that brief, we overrule Wiles's first assignment of error, and we sustain his second assignment of error. Accordingly, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Probate Division. Having concluded that the trial court's imposition of a ten-day jail sentence was an abuse of discretion, we remand this matter to the court for further proceedings consistent with this opinion and applicable law.

Judgment affirmed in case No. 07AP–186.

Motion to strike brief denied and motion to strike footnote granted in case No. 07AP–350.

Judgment affirmed in part and reversed in part, and cause remanded in case No. 07AP–350.

DESHLER, J., concurs.

BROWN, J., concurs in part and dissents in part.

DESHLER, J., retired, of the Tenth District Court of Appeals, sitting by assignment.

BROWN, J., concurring in part and dissenting in part.

{¶ 52} Because I disagree with the majority's analysis of Wiles's first assignment of error, I must respectfully dissent on that issue only. Wiles argues in his first assignment of error that the trial court abused its discretion when it summarily found him in direct criminal contempt of court on April 12, 2007. As explained above, direct contempt occurs in the presence of the court and obstructs the administration of justice. R.C. 2705.01. Further, criminal contempt imposes sanctions that are punitive in nature. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 555, 740 N.E.2d 265. R.C. 2705.01 provides that a court may summarily punish a contemnor for direct contempt, and due process does not require that the court grant the contemnor a hearing. *In re Purola* (1991), 73 Ohio App.3d 306, 312, 596 N.E.2d 1140. The determination of the character of conduct that constitutes direct contempt of court is within a trial court's sound discretion; thus, absent an abuse of discretion, an appellate court will not disturb a trial court's contempt determination. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786, 790, 673 N.E.2d 182. Because the purpose of contempt proceedings is to uphold the dignity and authority of the courts, great deference is given to the judgment of the trial judge. *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362.

{¶ 53} While a finding of contempt is within the discretion of the court, to sustain a conviction of criminal contempt the elements of the offense must be proven beyond a reasonable doubt. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610. The elements include an intent to defy the court and conduct that poses an imminent threat to the administration of justice. *Catholic Social Serv. of Cuyahoga Cty. v. Howard* (1995), 106 Ohio App.3d 615, 666 N.E.2d 658. To justify a finding of summary contempt and imposition of summary sanction, the contumacious act must pose a threat that requires immediate sanction to preserve the dignity and very functioning of the court. *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 64 O.O.2d 129, 299 N.E.2d 686 (Brown, J., dissenting).

{¶ 54} After reviewing the transcript of the proceedings in question, and after considering the other surrounding circumstances, I must depart from the majority's analysis and conclude that the actions in the case at bar do not rise to the

level necessary for a criminal-contempt finding. There was no serious threat to orderly proceedings when the trial court found Wiles in contempt. It is true that Wiles refused to explain to the court why he believed his representation of Linda and Ronald was not a conflict of interest; however, Wiles's obstinacy did not pose an imminent threat to the administration of justice. Because the purpose of the hearing was not related to the conflict of interest, and the hearing on the scheduled matters had already concluded, the progress of the hearing was not in jeopardy. See *State v. Conliff* (1978), 61 Ohio App.2d 185, 189, 15 O.O.3d 309, 401 N.E.2d 469 (insulting remarks during a trial may well give rise to a summary conviction of direct contempt, but remarks occurring at the end of the proceedings are less likely to immediately imperil the further progress of the proceedings). There was little threat to the overall administration of justice.

{¶ 55} Further, Wiles's comments, while disrespectful, did not pose such a threat that immediate sanction was required to preserve the dignity and functioning of the court. A court must be careful to guard against confusing actions or words that are contemptuous to the judge's personal feelings or sensibilities and actions or words that constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. Id. at 189, 15 O.O.3d 309, 401 N.E.2d 469. The context, as can be best gleaned from the transcript here, does not suggest that Wiles made the statements in a loud or boisterous manner. Wiles's responses were also not outbursts that disrupted the proceedings but, rather, occurred in the course of conversation. To be sure, I do not condone Wiles's actions, and I can sympathize with the trial court's frustration when viewing Wiles's comments in conjunction with what the trial court viewed as Wiles's history of "snotty" remarks, stonewalling, and delay tactics. Indeed, as noted by the majority, the circumstances surrounding the offensive statements before a court are relevant in determining whether conduct was of such a nature as to amount to criminal contempt. Id. at 190, 15 O.O.3d 309, 401 N.E.2d 469. However, even when considering the surrounding circumstances, I cannot conclude that Wiles's remarks at the hearing impeded, embarrassed, or obstructed the court in the performance of its present functions. See *In re Green* (1961), 172 Ohio St. 269, 15 O.O.2d 449, 175 N.E.2d 59, paragraph one of the syllabus (insolent and personally insulting remarks to the judge were not of a nature that tended to impede, embarrass, or obstruct the court in the performance of its functions).

{¶ 56} In addition, this court has before suggested that despite no requirement that a trial judge issue a warning that a contempt finding is imminent, such notice may be effective to cause an obstreperous attorney to either temper his remarks or acquiesce to the court's directive. See *Camburn v. Camburn*, Franklin App. No. 05AP–152, 2005-Ohio-6502, 2005 WL 3317349, at ¶ 19. As we made clear in

*Camburn,* I do not mean to question the trial court's concern for placing a high premium on the importance of maintaining civility and good order in the courtroom. Indeed, I concur that Wiles's comments were discourteous; however, the standard for criminal contempt focuses less on the level of offensiveness of the acts or words and more on the effect of those acts or words on the administration of justice. Finding that Wiles's remarks did not have the deleterious effect on the administration of justice required of a criminal contempt finding, I believe the court's contempt finding was in error. Accordingly, for the foregoing reasons, I would sustain Wiles's first assignment of error and reverse the trial court's judgment in this respect. Given my resolution of Wiles's first assignment of error, Wiles's second assignment of error would be moot. Therefore, I respectfully dissent, in part, from the majority's opinion.