[Cite as *State v. Lowe*, 2018-Ohio-3916.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NOS. C-170494 |
| | | C-170495 |
| Plaintiff-Appellee, | : | C-170498 |
| | | C-170505 |
| vs. | : | TRIAL NOS. 17CRB-20692A |
| | | 17CRB-20692B |
| JAVONTE LOWE, | : | 17CRB-20710 |
| | | 17CRB-24718 |
| Defendant-Appellant. | : | |
| | | |
| | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: September 28, 2018

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Ashley Melson*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1}   In these consolidated appeals, defendant-appellant Javonte Lowe challenges the weight and sufficiency of the evidence adduced to support his convictions for criminal damaging, menacing, and resisting arrest, resulting from a violent confrontation with his former girlfriend.  During the trial of these charges, Lowe was found in direct, criminal contempt of court.  He has also challenged that conviction.

{¶2}   In the early evening of July 28, 2017, Lowe phoned his former girlfriend, Kelsey Nelson. The two had lived together in Nelson's Cincinnati apartment for a one-month period.  A dispute over Nelson's brother had ended the relationship.

{¶3}   Standing outside the apartment, Lowe demanded that Nelson come outside.  Lowe threatened, "Bitch.  I'll beat your ass."  Nelson, afraid for her safety, stayed inside.  Through her window, she took a photograph of Lowe brandishing a rock while he threatened her on the phone.  He also made an obscene finger gesture to Nelson.  According to Nelson, Lowe then violently kicked her door, damaging it below the lock.  Nelson later took a photograph of the damaged door.

{¶4}   Though he stated that he had come with roses to apologize to Nelson, Lowe admitted that he had brandished the rock and made the gesture.  Lowe later offered that perhaps brandishing the rock was only a "coping skill" for his "mental health issues."  But Lowe denied threatening Nelson or damaging the bottom of the door.  His friend, who had driven him to Nelson's apartment, later testified that he had not seen any damage to the bottom of the door.

2

{¶5} Nelson summoned the police, who arrived shortly after Lowe's departure. Cincinnati Police Officer Jay Stephens came to Nelson's apartment after the responding officers had taken Nelson's statement. They indicated that Lowe would be charged with criminal damaging and menacing. After receiving a description of Lowe, Officer Stephens began a search of the immediate area in his marked police cruiser.

{¶6} Officer Stephens was wearing a body camera. The video from the camera provides a precise timeline of the subsequent events. Some five minutes into his search, Officer Stephens returned to the apartment parking lot. Nelson informed him that Lowe was nearby and had removed his shirt.

{¶7} The officer drove around the area and returned again to talk to Nelson, who had begun a cellular telephone call with Lowe. Nelson used the audio speaker on the phone and their conversation was recorded by Officer Stephens' body cam. Lowe cursed Nelson for calling the police, telling her that "I didn't think you was one of them." The two argued until Officer Stephens joined their conversation. He addressed Lowe, "Hey, man. Hey, Javonte," identified himself as a police officer, and informed Lowe that warrants had been issued for his arrest. In a storm of profanity, Lowe stated that he wasn't going to turn himself in and that the police would have to chase him. Lowe hung up and Officer Stephens renewed his search in the nearby streets.

{¶8} Three and one-half minutes later, Officer Stephens spotted a person walking along Winneste Avenue. Though evening was falling, with the aid of light cast by nearby streetlights, Officer Stephens identified Lowe as the walker. Officer Stephens stopped his cruiser, exited from the vehicle, and yelled, "Hey, man." Lowe fled through backyards. The body cam recorded Officer Stephens' words but did not

show Lowe. Despite a long foot chase, Officer Stephens was unable to catch Lowe. The record reflects only that Lowe was taken into custody at some later time.

{¶9} The menacing and criminal-damaging charges were tried to the bench. Nelson, Lowe, and his driver each testified. At the beginning of his testimony, Lowe admitted that he had a prior conviction for felonious assault and that he was on "parole" for that offense. At the conclusion of the trial, the court declared that Lowe was not a credible witness, and entered findings of guilt on both charges.

{¶10} The court then heard the resisting-arrest charge. Officer Stephens testified that he had spotted Lowe from a distance of ten to 15 feet away. The trial was continued while the body cam video was obtained. The video was played for the court. Lowe did not testify. The trial court again found Lowe guilty.

{¶11} During the sentencing hearing, and before sentencing was completed, Lowe engaged in an expletive-laden tirade directed at Officer Stephens and the trial court. For that outburst, Lowe was found guilty of contempt of court and sentenced to an additional 180 days' incarceration. The court also imposed 60- and 26-day periods of confinement for the criminal-damaging, menacing, and resisting-arrest criminal offenses. In each instance, the court credited Lowe with 26 days already served, and imposed $100 fines. The court also ordered restitution for the damage caused to the door. Lowe brought these appeals.

## I. Sufficiency- and Weight-of-the-Evidence Claims

{¶12} In his first assignment of error, Lowe challenges the weight and the sufficiency of the evidence adduced to support his convictions for criminal damaging, menacing, and resisting arrest. In reviewing Lowe's sufficiency-of-the-evidence challenges, we must determine, after viewing the evidence in a light most favorable to the state, whether a rational trier of fact could have found the elements of the

4

crimes proven beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In contrast, when reviewing the weight-of-the-evidence challenges, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trial court, sitting as the trier of fact, clearly lost its way and created a manifest miscarriage of justice. *See id.* at 387.

### a. The menacing and criminal-damaging offenses

{¶13} In the case numbered 17CRB-20692A, Lowe was convicted of criminal damaging. R.C. 2909.06(A)(1) defines the offense and provides that no person shall knowingly cause physical harm to any property of another without the other person's consent. In the case numbered 17CRB-20692B, Lowe was convicted of menacing. Under R.C. 2903.22(A), "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person * * *."

{¶14} Our review of the entire record fails to persuade us that the trial court, acting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *See Thompkins* at 387. We can find no basis in the record to conclude that this is "an exceptional case" in which the trier of fact lost its way. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶15} The court was entitled to reject Lowe's explanation that he did not kick or throw a rock at Nelson's door, that any damage to the door existed before his arrival at the apartment, and that he had not threatened Nelson but had merely returned to her apartment to apologize and to recover his possessions. The state presented ample evidence to support the convictions, including Nelson's testimony

that Lowe had appeared outside her apartment, had yelled for her to come outside, had brandished a rock and threatened to assault her, and had kicked her door, damaging it below the lock as reflected in the photograph admitted into evidence.

{¶16} As the weight to be given the evidence and the credibility of the witnesses were for the trial court, sitting as the trier of fact, to determine, in resolving conflicts and limitations in the testimony, the court could have found that Lowe had knowingly caused physical harm to the apartment door and had knowingly caused Nelson to believe that he would cause her physical harm when he yelled, "Bitch. I'll beat your ass," and brandished the rock. *See* R.C. 2909.06(A)(1) and 2903.22(A); *see also State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶17} Here, the record also reflects substantial, credible evidence from which the trial court could have reasonably concluded that all elements of the charged crimes of criminal damaging and menacing had been proved beyond a reasonable doubt. *See Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

### b. The resisting-arrest offense

{¶18} In the case numbered 17CRB-20710, Lowe was convicted of recklessly resisting his own arrest when he fled from Officer Stephens. No person, either recklessly or by force, is permitted to resist or interfere with his own lawful arrest. R.C. 2921.33(A). An arrest occurs when the following four requisite elements are present: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. *See State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, ¶ 7-8 (1st Dist.), citing *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980).

**{¶19}** The key element challenged by Lowe in this appeal is whether a lawful arrest had occurred. Lowe argues that the state failed to adduce evidence demonstrating that Officer Stephens had an intent to arrest Lowe, and that a reasonable person in Lowe's position would have understood that he was under arrest when a uniformed police officer exited from a police cruiser and yelled, "Hey, man."

**{¶20}** This court has long held that a person who simply flees when a police officer approaches and yells, "Halt," has not been arrested, where the person had no knowledge that a warrant for his arrest had been issued. *See, e.g., State v. Bailey*, 1st Dist. Butler No. CA 75-08-0077, 1977 WL 199625, *1 (Jan. 5, 1977); *see also Carroll* at ¶ 14. But here, examining the evidence in a light most favorable to the state, we hold that a rational trier of fact could have found the elements of resisting arrest beyond a reasonable doubt.

**{¶21}** First, Officer Stephens testified that he knew that the officers investigating the menacing and criminal-damaging offenses had issued warrants for Lowe's arrest. Seven minutes before Officer Stephens spotted Lowe, he had told Nelson, "If we find [Lowe], we'll take him to jail." Based on those statements, it is clear that the state adduced sufficient evidence that Officer Stephens had probable cause to arrest Lowe and that he indented to arrest Lowe on sight. *See State v. Jackson*, 1st Dist. Hamilton No. C-990371, 2000 WL 376420, *1 (Apr. 14, 2000); *compare Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, at ¶ 17 (distinguishing *Jackson*, and noting that where an arresting officer had no basis to arrest a defendant save that he was running from a brother officer, there was not sufficient evidence of resisting arrest).

{¶22} Next, a reasonable person in Lowe's position would have understood that he was under arrest when Officer Stephens exited from his police cruiser and yelled, "Hey, man." Lowe knew that warrants had been issued for his arrest and that the police were looking for him. *Compare Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, at ¶ 16. When Nelson was talking with Lowe over her cell phone's speaker, Officer Stephens had addressed Lowe, "Hey, man. Hey Javonte," and identified himself as a police officer. Officer Stephens told Lowe that "You got some warrants. You need to take care of them. * * * You got warrants. You need to turn yourself in." In response, Lowe challenged Officer Stephens that he would have to be caught.

{¶23} Less than four minutes later, Officer Stephens saw Lowe walking along the street. Officer Stephens was in uniform and had exited from a marked police cruiser. He yelled, "Hey, man," and Lowe fled.

{¶24} Considering these facts, where proof existed that Lowe had been informed only moments before that the police were looking specifically for him to execute warrants for his arrest, and that his flight amounted to an obvious interference with his apprehension, we hold that the record reflects substantial, credible evidence from which the trial court could have reasonably concluded that each element of resisting arrest had been proved beyond a reasonable doubt, including that the police had an intent to arrest Lowe and that Lowe knew of that intention. *See* R.C. 2921.33(A); *see also Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, at ¶ 8; *Thompkins*, 78 Ohio St.3d 380 at 386, 678 N.E.2d 541.

{¶25} Moreover, our review of the record fails to persuade us that the trial court clearly lost its way and created a manifest miscarriage of justice in convicting Lowe of resisting arrest. The state presented ample evidence that Lowe had resisted

arrest, including the testimony of Officer Stephens and the body cam recording. As the weight to be given the evidence and the credibility of the witnesses was primarily for the trier of fact to determine, the trial court could properly have found that Lowe had recklessly resisted or interfered with his own lawful arrest, and was thus guilty of resisting arrest under R.C. 2921.33(A). *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The first assignment of error is overruled.

### II. Lowe's Contumacious In-Court Behavior

{¶26} In his second assignment of error, Lowe argues that the trial court erred in holding him in contempt and in sentencing him to 180 days of confinement as a sanction for contempt.

{¶27} Prior to Lowe's outburst at sentencing, the trial court had warned him against making disparaging remarks about Officer Stephens. During the trial of the resisting-arrest charge, immediately after the officer's in-court identification of Lowe, the trial court was forced to interrupt the proceedings and warn Lowe's counsel that "Your client is mouthing * * * threats to this officer, and I will not stand for it in this courtroom."

{¶28} Nevertheless, Lowe persisted in the proscribed behavior. As the trial judge was imposing sentence on the menacing offense, Officer Stephens heard Lowe mutter something and asked what he had said.

{¶29} Lowe responded, "I called you a bitch." The trial court immediately intervened.

> THE COURT: You are in contempt.
>
> THE DEFENDANT: Fuck you.
>
> THE COURT: You are in contempt.
>
> THE DEFENDANT: I'm good. I'm good.

THE COURT:  I'm sentencing you to six months in jail.

THE DEFENDANT:  You a bitch too.  You a bitch ass police officer.  You ain't never seen me run.

THE COURT:  Do you want a year?

THE DEFENDANT:  I'm already doing a year.

THE COURT:  I'm ready to give you a year.

THE DEFENDANT: I'm on parole.  I been in prison.  What the fuck you talking about?  You ain't seen nothing.  What the fuck you talking about?

{¶30}  The trial judge then left the bench and the disrupted proceedings were recessed.  When the trial judge returned to the bench, he imposed a 180-day term of confinement and remitted a $100 fine in response to Lowe's "prolonged profanity toward the judge including threats."

{¶31}  On appeal, Lowe asserts that his initial comment at sentencing, calling Officer Stephens a "bitch," did not disrupt the courtroom proceedings, but rather Officer Stephens' request that Lowe repeat his comment prompted and justified Lowe's outburst.  He also claims that the trial court's sanction was excessive.

{¶32}  Contempt of court is "conduct which brings the administration of justice into disrespect" and "which tends to * * * obstruct a court in the performance of its functions."  *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).  The power to punish contumacious conduct—to ensure the effective administration of justice, to secure the dignity of the court, and to affirm the supremacy of the law—is inherent in a trial court, as well as derived from statute. *See Denovchek* at 15.

{¶33} R.C. 2705.01 empowers a court to "summarily punish" direct contempt. Direct contempt is misbehavior that is committed in the presence of the court in its judicial function, and that obstructs the orderly administration of justice. *See State v. Adams*, 2014-Ohio-2728, 14 N.E.3d 1071, ¶ 12 (1st Dist.); *see also State v. Webster*, 1st Dist. Hamilton No. C-070027, 2008-Ohio-1636, ¶ 56.

{¶34} The sanction for direct contempt can be criminal in nature. Criminal contempt involves a punitive sanction imposed for an already completed act of disobedience, and designed to vindicate the authority of the court. *See Denovchek* at 16; *see also State v. Kilbane*, 61 Ohio St.2d 201, 204-205, 400 N.E.2d 386 (1980). Criminal contempt proceedings require proof of guilt beyond a reasonable doubt. *See In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, at ¶ 5. Thus, to find direct, criminal contempt a court need only determine, beyond a reasonable doubt, that the contemnor's actions obstructed the administration of justice. *Adams* at ¶ 15.

{¶35} Here, Lowe's actions constituted direct, criminal contempt of court. Lowe made his repugnant statements in open court, during court proceedings, and in the presence of the trial judge. Despite being previously warned not to make threats, Lowe engaged Officer Stephens again. This second outburst occurred while the court was imposing sentence on Lowe's misdemeanor offenses. *See* R.C. 2929.22; *see also* Crim.R. 32. Lowe's profanity-laced tirade was not simply made in response to Officer Stephens but was also directed at the trial court. The outburst disrupted the proceedings, necessitating a recess. The record demonstrates, beyond a reasonable doubt, that Lowe's actions obstructed the administration of justice in the municipal court. *See* R.C. 2705.01; *see also Adams* at ¶ 15. The trial court did not err in finding Lowe guilty of direct, criminal contempt.

**{¶36}** Lowe next challenges the length of the 180-day sentence imposed for his contumacious behavior. He notes that the sanction was well in excess of the 30-day limit for a first contempt offense identified in R.C. 2705.05(A)(1). But as Lowe acknowledges, R.C. 2705.05 does not apply to limit the punishment that a court may impose for direct contempt. *See Kilbane*, 61 Ohio St.2d 201, 400 N.E.2d 386, at paragraph one of the syllabus. Rather, an appellate court will not reverse the punishment imposed for direct contempt absent an abuse of discretion. *See id.* at 207; *see also Bank One Trust Co. v. Scherer*, 176 Ohio App.3d 694, 2008-Ohio-2952, 893 N.E.2d 542, ¶ 47 (10th Dist.).

**{¶37}** Here, the court imposed a 180-day jail sentence for the contempt finding. The trial court found that Lowe interfered with the orderly administration of justice and made threats to the court. Lowe had disobeyed the court's prior admonition to refrain from disparaging a state's witness. We cannot say that this sentence was not "reasonably commensurate with the gravity of the offense," and thus was an abuse of discretion. *See Kilbane* at paragraph one of the syllabus; *see also Webster*, 1st Dist. Hamilton No. C-070027, 2008-Ohio-1636, at ¶ 58 (affirming a 120-day sentence for multiple interruptions of court proceedings). The second assignment of error is overruled.

### Conclusion

**{¶38}** Having overruled each of Lowe's two assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**ZAYAS** and **MYERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.