Hitchcock, J.
It would seem that there can be no real controversy, but that the complainant, Allen, has a demand against Barret, which might have been set off in the suit at law. This *450 claim was put forth by him as early as 1830, in the case of Campbell, Rudisil & Co., against Barret and himself, and was then stated to be $1,062.98. Medill, in his letter of October 16, 1834, speaks of this as being a just claim, and agrees that it may be applied upon the notes, when the correct amount is ascertained. And it does not appear that Medill, at any time, either before or after the rendition of the judgment, denied that Allen was entitled to this credit. He only insisted that as. it was not set off in the case in which suit had been brought and judgment recovered, it should stand over as a credit upon some of the other notes. Titus King states that this is the amount appearing to be due upon Allen’s books, and that the account is correct. In truth there does not seem tobe any controversy upon this point; and I think it may well be taken as established that this balance is due Allen. And it would undoubtedly have been allowed to him, had he not set up, in the case at law, a most unconscionable and groundless defense. Still he must not be deprived of his rights.
This account might have been set off at law ; and, as a general rule, where a man has failed to make a defense at law, he can not afterward be permitted to set up the same matter in chancery. It can be done under peculiar circumstances. A man is not bound, however, to set off any claim which he may have against his antagonist, and which is the proper subject of set off. If he prefers a different course, he may prosecute a separate suit, and recover a judgment, but he can recover no costs. This subject is very properly regulated by statute; after judgment is recovered, if the judgment of his antagonist is still subsisting, he may, on motion, have one sot off against the other. Courts of law, in this summary manner, do that justice between ^parties which was formerly done, and might still be done, by courts of equity.
But although we would not, in ordinary cases, sustain a bill like the case before us, yet there may be circumstances which would justify us in so doing. Allen might unquestionably have his action against Barret; but Barret has left the country, and not only so, the proofs show that he is insolvent. A judgment against him, then, would be of no avail, unless it could be set off against this judgment. It may be said, and has been said, that this account might be set off against subsequent notes; but the reasons assigned by complainant’s counsel why this should not be done, are not without much force. The notes upon which the *451 judgment was rendered, were the first due. They were payable in cloth at an enormous price. By the judgment, they are payable in money. This account was contracted before these notes fell duo, and by agreement of parties, was to be applied iu part payment. These circumstances are all for the consideration of the court, but they are not sufficient to justify us in departing from the regular course of pi’oceeding.
The case made in the bill, however, if true, is one which would not only justify, but would require the interference of the court. The ground of relief relied upon is, that the complainant was thrown off his guard, and induced to neglect to make the proper defense at law, in consequence of the assurance of Medill, who was managing for those interested, that the account should be allowed after judgment. If this were so, this court would bo negligent of its duty not to compel the performance of that agreement. If these statements are true, a fraud has been practiced, and I trust we shall ever be ready to relievo against fraud. These allegations of the bill are denied in the answer; and by this denial, an issue has been made up between the parties.
Many witnesses have been examined, and much testimony taken.
The principal witness for complainant is Charles Sweetzer. He proves explicitly the charges made in in the bill; says he managed *tho case ior Allen, who is his brother-in-law. That before the trial in the court of common pleas, it was agreed between himself for the complainant, and Medill and Stanbery for the creditors of Barrett, that the case should be tried upon the defense set up in the notice of special matter; that no evidence should be offered under the notice of set-off; but that the amount should be allowed upon the judgment, provided one should be obtained. Toward the close of his deposition, he seems to express some doubt whether Mr. Stanbery heard all the conversation between himself and Medill. Ho says the conversation took place at the end of the bar table, and this arrangement was the only reason that prevented him from giving evidence, both in the court of common pleas and Supreme Court, under the notice of set-off.
Now here we have the statements of Medill and Sweetzer, in direct conflict with each other, and we believe there must be some mistake — some misunderstanding. As it is stated by Sweetzer that Mr. Stanbery was present, and taking part in this arrangement, wo would have been glad to have had his testi *452 mony. But we know enough of his honorable feelings and del ioate sense of propriety, to be satisfied that he would not testify in the cause of his client, unless compelled by the opposite party.
In addition to the testimony of Sweetzer, we have the testimony of Jesse Allen, a son of the complainant, who testifies substantially to the same facts. Now, it must be admitted that this witness testifies under suspicious circumstances, when it is considered that his testimony, important as it is, was not discovered until since the last term of this court. But still we should not perhaps be justified in saying that the statement which he makes is false, and entirely without foundation. From the testimony of Patterson, it would seem at least probable that there had been some conversation between Medill and Allen, or Medill and Sweetzer, in some sense like that stated by Sweetzer.
Taking all the testimony together, we are led to the conclusion *that there has been some mistake — some misunderstanding. In order to get a trial, for which Sweetzer was not fully prepared, Medill might and probably did say something from which Sweetzer drew the inference which he has stated, Medill not making nor intending to make any positive agreement upon the subject. If so, and if, in consequence thereof, Sweetzer was induced not to offer evidence of his offset, as he swears he was, it seems to us to present a case where, as a court of equity, we may interfere to do justice between the parties, especially when, if we do not interfere, it is manifest that the complainant will most probably lose his entire demand. Wo are satisfied that justice requires that the judgment should be credited with the amount of the account, to wit, the sum of $1,062.98, and that this may be done without violating any of the well-known rules of chancery practice.
The complainant, however, is claiming a credit of $1,100 or $1,200 beyond this, upon the ground that the amount of Allen’s account against Barret was not alone to be set off against the notes in controversy, but the amount of his account against Barret and Titus Ring, who seem to have been partners in the factory business before the purchase by Allen. Allen, in his answer to the bill in chancery in Fairfield county, on October 6, 1830, in which he sots forth the nature of his contract with Barret, makes no such pretense as this. In that answer he states *453 the understanding to have been that his account against Barret should be applied upon the notes — not his account against Barret and King; and it was with respect to this account alone that the negotiation between Sweetzer and Medill, if there were any negotiation, took place. In this answer the amount of the account was stated, and stated, too, as it appears by the testimony of King, as it appears upon the books. There is nothing to show that any pretense was over made to Medill of an account over and beyond this. *
In the original bill , in the present case, filed November 28, 1828, in the amended bill, filed August 10, 1840, the statement is the same, with respect to this set-oif, as in the answer filed *1830. Nor does the second amended bill, filed in 1842, vary the case in this respect. Upon what, then, is the pretext founded? Merely upon a deposition of King himself, taken in 1841, in which he states that Allen had been mistaken with respect to his rights, and that the credits should be $2,185.77, instead of the sum named in the answer of 1830, and he attributes the mistake to the fact that Allen must have been in a great hurry when he made that answer. If this mistake was made through haste in 1830, it would seem there had been sufficient time for recollection in 1838, when this suit was commenced; and if not then, certainly before 1840 and 1842, when the amendments were made. And it is at least reasonable to suppose that Allen must have known as much with respect to the understanding between himself and Barret as King could have done.
There is .in truth no pretense for this additional credit, and I must say that the fact of its being insisted upon, is a circumstance more powerful in my mind than any other, to excite a doubt as to the equity of the entire claim.
It is objected on the part of defendants, that Medill was acting as a trustee in this business; and that, admitting that he made the agreement allowed in the bill, that agreement could not be enforced to the injury of his cestuis que trust. It seems to us that this defense can not avail. Medill, it is true, was a trustee for the creditors of Barret, but he was acting as attorney in the management of the case. "We consider the case as one whero an arrangement has been made by counsel at the bar of the court, for the trial of a cause, by reason of which defendant has been prevented from putting forth his particular defense, upon the expectation *454 that he should have the benefit of it after judgment. In such case, if the agreement is not consummated, a iraud is practiced, if not by party, at least by attorney, and the party shall not receive the benefit of that fraud. We would not be understood as saying that there was in fact any positive agreement, so understood by Medill; but we entertain the opinion that there must have been some conversation, from which Sweetzer got the impression that there was *such an agreement, and that it was for this reason that the set-off was not made in the proper court. If he was mistaken in this, this very mistake, taken in connection with all the circumstances of the case, furnishes sufficient ground for the interference of this court.
It is again objected that Medill was acting merely as an executive officer of the court of common pleas, and should not have been made a defendant, and his case is assimilated to that of a sheriff. I know it is a common practice, in some parts of the state, to make a shei-iff, who has in his hands an execution, a party defendant to a bill, to enjoin the judgment upon which execution was issued ; and there can be no doubt that this, as a general rule, is entirely wrong. A sheriff is an officer of the law. He is in no shape interested in the judgment upon which the execution has been issued. But still, if the sheriff unlawfully combines with the creditor, unnecessarily to oppress and harass the debtor, he may with propriety be made a defendant. In the case before the court, Medill is charged with being the active agent in the commission of the fraud. He was, therefore, with propriety, made a defendant.
Again, it is urged that all the parties in interest are not before the court. Here there is no difficulty. The parties in interest are the creditors of Barret. They are not named, however, in the record of the judgment at law. When called upon to name them, Medill has refused to do it. It does not appear that they were known to the complainant. Under these circumstances, a majority of the court are of the opinion that relief may be granted upon the case as now presented.
In our opinion, the judgment should be credited with the said sum of §1.062.98, as of the date of the judgment, with interest thereon from the time the first note fell due, and that each party should pay their own costs ; the costs of the defendant to be paid from the fund in Medill’s hands, for the benefit of the creditors.