Robinson, J.
 

 The first question that presents it-, self to the court in the consideration of this case is whether the record discloses that degree of proof essential to warrant a court of equity in canceling a mortgage deed.
 
 Frate
 
 v.
 
 Rimenik,
 
 115 Ohio St., 11, 152 N. E., 14.
 

 The duress relied upon in this case was an alleged threat by the Standard Sanitary Manufacturing Company to prosecute Stillman A. George for making a false financial statement for the purpose of securing credit, the securing of credit on such statement, and the sending of such statement through the United States mail service, and was based upon a conversation between Mr. Moeller, who was credit manager of the Standard Sanitary Manufacturing Company, and Stillman A. George, husband of Katherine George, a conversation between Mr. George and Mr. Goodwin, who was resident manager of the Standard Sanitary Manufacturing Company, and certain conversations between Stillman A. George and Katherine George.
 

 The evidence upon the subject of the conversation between Mr. Moeller and Mr. George and Mr. Goodwin and Mr. George consisted of the evidence of Mr. Moeller, Mr. George, Mr. Goodwin, and Mr. Morganstern, who was the attorney of Katherine George.
 

 Mr. George’s testimony upon the subject of the conversation was:
 

 “A. Well, he says, ‘Your account is getting too large. You owe us about $23,000, and we got to have something paid on it; it’s got to be taken care of.’
 
 *567
 
 And I told him I would pay it as fast as I could, and he said, ‘That won’t do,’ he said, ‘we have got to have this thing straightened out.’ And I said, ‘Well, I’ll refer to our accounts receivable, and I will get them in as fast as I could, and do the best I could in the matter;’ and he says, ‘Well, we have got to have some security.’ I says, ‘I haven’t any security I can give you, outside of some life insurance and some lots out on Beacom street;’ and he says, ‘That won’t do,’ he says, ‘We’ve got to have better security.’ I says, ‘I don’t know what I can give you.’ He says, ‘Well,’ he says, ‘there’s your homes.’ I says, ‘Well, I never could get the wife to sign up any more on homes.’ And he says, ‘Well, they’re in your statements; it’s part of your assets, and we have extended your credit on the strength of those.’ * * *
 

 “A. On the strength of their being in the statement. And I told him the homes were in our wives’ names, and that Mrs. George had put one home into the place and mortgaged another, and I knew she wouldn’t go any farther.”
 

 That was all the evidence of Mr. George upon that subject. The rest of his testimony related to conversations between him and his wife, Katherine George, and between him and his, or his wife’s attorney, Mr. Morganstern.
 

 The testimony of Mr. Moeller and Mr. Goodwin of the conversation with Mr. George was to the'same effect as the testimony of Mr. George, and further disclosed that the Standard Sanitary Manufacturing Company had, through both Mr. Moeller and Mr. Goodwin, in the same conversation, informed Mr. George that, unless a blanket mortgage for $25,000
 
 *568
 
 was executed to it on the homes of Mrs. Maskell and Mrs. George, no more credit would be extended to the Maskell-George Company; that the credit of the Maskell-George Company was thereupon suspended, and was not resumed until after the execution of the mortgage by Mrs. George.
 

 The testimony of Mr. Morganstern was to the same effect, and to the further effect that he secured the consent of the Standard Sanitary Manufacturing Company to accept two $10,000 mortgages, one on each of the homes, in place of the blanket mortgage of $25,000 on both the homes, which was done, and that he had exacted of the Standard Sanitary Manufacturing Company, the delivery to him of the financial statements as a condition precedent to the delivery of the executed mortgage deed, and had agreed to return the statements to the Standard Sanitary Manufacturing Company in the event that the title should, upon examination, prove defective, but to be disposed of as he saw fit when and in the event that title should be approved.
 

 There is no other evidence in. the record upon the subject of the threat, unless the evidence of Mr. George that he told his wife and told her attorney that the Standard Sanitary Manufacturing Company, through Mr. Moeller and Mr. Goodwin, had threatened him with criminal prosecution, be considered as competent to prove that such threat had, in fact, been made. Such evidence was competent for the purpose of proving the coercion of Mrs. George by Mr. George, but was not competent to prove that such threats had been made by the representatives of the Standard Sanitary Manufacturing Company, and did not tend to prove such fact.
 

 
 *569
 
 Mrs. George then must rest her case on this issue upon such an inference, if any, as may be drawn from the delivery by the Standard Sanitary Manufacturing Company of the financial statements to her attorney at his request, with instruction by the Standard Sanitary Manufacturing Company that such statements be returned to it in the event that the title to the property be not approved.
 

 We doubt whether an inference of a threat of criminal prosecution, unaided by evidence of any other fact tending to prove such a threat, could reasonably be drawn from such circumstance; but, even if it could, and even if the evidence of the conversations between Mr. George and Mrs. George, and between Mrs. George and Mr. Morganstern, were competent to prove this issue, which it is not, the inference is so remote and the testimony of Mr. George so at variance with his own testimony of what actually was said, and so at variance with the testimony of Mr. Moeller, Mr. Goodwin, and Mr. Morganstern, that the proof of such threat by the Standard Sanitary Manufacturing Company cannot be said to have been established by even a preponderance of the evidence, much less by clear and convincing proof, for there is nothing disclosed by this record which would tend to impair the credibility of Mr. Moeller, Mr. Goodwin, or Mr. Morganstern, while Mr. George’s evidence of what was actually said, and what he told his wife was said, tends to discredit his whole testimony. The interest of Mr. George does not appear to be any less than the interest of Mr. Goodwin and Mr. Moeller, and the record discloses no interest of Mr. Morganstern; and it must be remembered that the Court of Ap
 
 *570
 
 peals weighed this evidence upon the transcript of the referee,o and did not have the benefit of seeing and hearing the witnesses any more than this court has.
 

 The record rather clearly discloses that Mr. George represented to his wife and represented to Mr. Morganstern that the Standard Sanitary Manufacturing Company had informed him that he was criminally liable, both for making a false statement for the purpose of securing credit, and for having transmitted such statement through the mails, and that Mrs. George was influenced by such statements and by her fear for her husband’s reputation and liberty. The record does not disclose that the Standard Sanitary Manufacturing Company haid notice or knowledge of such representation by Mr. George, nor that it in any way authorized Mr. George to use such pressure upon Mrs. George, or by subsequent action or inaction ratified it. That fact may not have any significance in determining whether Mrs. George executed the mortgage of her own free will, but it has significance in determining whether or not she may now assert the coercion of her by» her husband against the Standard Sanitary Manufacturing Company, after it, with her knowledge and her silent acquiescence, has relied upon the security of such mortgage, and has changed its position and extended credit to the extent of many thousands of dollars.
 

 The record discloses that, if Morganstern, by virtue of his holding the financial statements until the first mortgage deed was executed, became the trustee, for that purpose, of the Standard Sanitary Manufacturing Company, his trust terminated upon
 
 *571
 
 the 6th day of May, 1925, when the mortgage was approved by the attorney for the Standard Sanitary Manufacturing Company. The record discloses that thereafter, on June 15, 1925, by reason of the fact that the Maskell-George Company, which had theretofore been a partnership, had become incorporated, it became necessary to substitute a new mortgage deed for the purpose of extending the credit to the corporation instead of to the partnership, and that Mrs. George executed that mortgage after the Standard Sanitary Manufacturing Company had surrendered all control over the financial statements, and that, if they were not in her possession, they were in the possession of her attorney, and, if retained from her by him, they were retained for some purpose other than the purpose of the Standard Sanitary Manufacturing Company. The record further discloses that subsequent thereto still a third mortgage of the same purport was executed by Mrs. George, to take the place of the second mortgage, and all this occurred after much time for deliberation and after she had had the advice of her own personal counsel; that,in July the financial statements were destroyed by her 'attorney; that on the 29th day of September, 1925, the Maskell-George Company went into bankruptcy, and thereafter, on the 29th day of October, 1925, this action was begun; that, in the meantime, the indebtedness of $23,000, which had existed at the time of the execution of the first mortgage, had been paid off, and additional credit extended and indebtedness incurred approximating $30,000; and that no notice of the fact that the three mortgages executed by Mrs. George were executed by her unwillingly was communicated to
 
 *572
 
 the Standard Sanitary Manufacturing Company until a month after the Maskell-G-eorge Company had gone into bankruptcy and had ceased to have any use for the credit that was afforded them by reason of the several mortgages.
 

 The legal question presented by. this record, then, is: Will a mortgagor who has been coerced by her husband into executing a mortgage to a third party for her husband’s benefit, which third party neither authorized nor knew of such coercion, be heard to question her execution of such mortgage after she has knowingly and silently permitted the mortgagee to extend credit to her husband or his firm, on the faith of such mortgage, up to and in excess of the face of the mortgage?
 

 While she disclaimed any interest in, or desire to secure future credit to, her husband’s firm, her own evidence clearly discloses that she knew at all times that the several mortgages provided for such credit, and knew that the credit which had been withdrawn shortly prior to the execution of the first mortgage was immediately thereafter extended to the MaskellGeorge Company by the Standard Sanitary Manufacturing Company, upon the faith of such mortgage. She knew she had executed each mortgage unwillingly as well the day she executed them as she knew it six months later, when she filed this action. Approximately 'two months elapsed between the execution of the first and second mortgages; and, while she then knew that the sole purpose of the execution of the second mortgage was to transfer the credit then being extended to the Maskell-George Company from siich company as a partnership to such company as a corporation, she made no protest
 
 *573
 
 to the Standard Sanitary Manufacturing Company, but by such second execution further invited it to continue to extend such credit, and, without protest to it, she executed still a third mortgage, for the purpose of correcting an error in the second mortgage.
 

 The fact that she may have refrained from repudiating her execution of the mortgages, including the mortgage here sought on the one hand to be canceled and on the other hand to be foreclosed, through fear that her husband might be punished criminally, will not excuse her silence to the prejudice of the mortgagee, unless the mortgagee be shown to have participated in the creation of such fear or to have had knowledge of its existence. Of the two innocent parties, Katherine George and the Standard Sanitary Manufacturing Company, the mortgagee, she, by executing the mortgage, created the situation which induced the mortgagee to extend credit, to its prejudice; by her silence, when it was her duty to speak, she induced the mortgagee, on the faith of the situation created by her, to part with its goods. She failed to exercise her privilege of repudiation when it would not have prejudiced the mortgagee and would have prejudiced her husband’s business. She cannot be heard to exercise it now, when it will advantage her to the prejudice of the mortgagee.
 

 The defendant in error Katherine George having failed to sustain by any degree of burden the proof that the Standard Sanitary Manufacturing Company authorized Mr. George to secure the execution of the mortgage deed by duress or coercion, or that it had notice or knowledge that its execution had
 
 *574
 
 been so secured, and the undisputed proof being that it had extended credit on the strength of such mortgage and had altered its position to its prejudice and to the advantage of the Maskell-George Company, the doctrine of estoppel will prevent Mrs. George from now asserting that her act was involuntary. The judgment will be reversed, and a decree of foreclosure entered.
 

 Judgment reversed.
 

 Marshall, C. J., Day, Kjnkade, Jones and Matthias, JJ., concur.
 

 Allen, J., concurs in the syllabus but not in the^ judgment.