[Cite as *Severing v. Severing*, 2015-Ohio-5236.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Severing, Execute of the Estate of Marjorie H. Bradburn, | : | |
| | : | |
| Plaintiff-Appellant, | : | No. 15AP-8 |
| | : | (Prob. No. 522475-B) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| John Severing et al., | | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

D E C I S I O N

Rendered on December 15, 2015

*McGrath & Foley, LLP*, and *J. Edward Foley*, for appellant.

*Plunkett Cooney*, and *Amelia A. Bower*, for appellee Bank of America, N.A.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

BRUNNER, J.

{¶ 1} This appeal from two judgment entries in the Franklin County Court of Common Pleas, Probate Division ("probate court") involves a land sale proceeding in the estate of Marjorie H. Bradburn ("Marjorie" or "decedent"). Plaintiff-appellant, her husband, John Severing, is the executor and sole beneficiary of the estate. In a separate declaratory judgment lawsuit filed by appellant, the probate court determined that decedent owned a two-thirds interest in real estate located at 6125-6127 Clark State Road in Columbus, Ohio. The remaining one-third interest belonged to John Severing individually. Appellant filed this action to pursue a sale of this property. The probate

court denied his request to sell it under R.C. 2127.02, but it permitted the sale under R.C. 2127.04.

{¶ 2}   Under R.C. 2127.02, appellant would have been permitted to receive the $40,000 family allowance for support pursuant to R.C. 2106.13.  Assets passing under the will were subject to the allowance, and appellant applied to sell the Clark State Road property in order to pay the allowance, since other probate assets were exhausted.  Such other assets included real property at 5218 North High Street, Columbus, Ohio, appraised at $75,000.  Appellant, to whom the $40,000 allowance would be paid, did not sell the North High Street property, but instead took title to it.  The probate court found that this action resulted in a merger which extinguished the right to payment of the allowance, having treated the $40,000 allowance as a lien against the estate.  In other words, the court ruled that, when appellant took title to the North High Street property, he satisfied his claim to the $40,000 allowance and thereby waived his right to assert further claim to it.

{¶ 3}   The Clark State Road property was sold for $291,700.  The property was encumbered by a note and mortgage currently held by appellee Bank of America, N.A. as mortgagee.  It is now undisputed that decedent was not competent to execute the mortgage to secure appellant's refinancing of the property, and appellant admittedly forged Marjorie's signature on the document.  The probate court concluded that appellant was estopped from challenging the validity of the mortgage held by Bank of America, finding that Bank of America was entitled to recover the amount it claimed was due: $162,573.56, with interest at the rate of 6.625 percent from April 1, 2009, when the loan went into default.

## I.  Facts and Procedural History

{¶ 4}   Marjorie died on February 27, 2007.  The estate's assets included a $6,400 refund from the Columbus City Treasurer and the North High Street property.  Appellant took title to the North High Street property by certificate of transfer on June 22, 2007.  The final account was filed the same day.  Remaining assets did not suffice to reimburse funeral and burial expenses, fiduciary fees, and the family allowance provided by R.C. 2106.13.

{¶ 5} Not listed among the assets was the Clark State Road property. On November 12, 1999, Richard and Jill Bradburn, Marjorie's son and his spouse, conveyed a one-third interest in this property to Marjorie, who thereafter married appellant on November 8, 2000. A "transfer on death deed" dated March 14, 2002 purported to transfer the remaining two-thirds interest in the Clark State Road property to appellant and decedent, with transfer on Marjorie's death back to Richard and Jill.

{¶ 6} Five years after the transfer on death deed was executed, and before Marjorie's death, appellant refinanced the Clark State Road property with America's Wholesale Lender. (The mortgage was later acquired by appellee Bank of America.) There is no indication that appellant sought or obtained the mortgage on less than the entirety of his and Marjorie's combined 100 percent interest in the property. The closing took place on February 16, 2007 at appellant's home where his ailing wife was still in residence. Documents were notarized by one Dennis Smith. According to appellant, Marjorie was in the advanced stages of Alzheimer's disease, and she expired 11 days after the closing. At his deposition in this matter, appellant testified that Marjorie did not sign the mortgage. Appellant stated, "I put the pen in her hand and I did it." (Severing Depo. 196.) Appellant was asked why he did not just sign it, and he responded, "[t]hey asked for her signature, and I went in the front room and did it that way. We had her in a hospital bed the last six months." (Severing Depo. 197.) When asked if the lender knew what he had done, appellant replied, "He didn't follow me in. He didn't see it, no." (Severing Depo. 197.)

{¶ 7} In October 2008, appellant brought an action in the general division of the Franklin County Court of Common Pleas for partition of the property from Richard and Jill, who maintained that their interest in the Clark State Road property was not encumbered by the mortgage because decedent was not competent to execute it. Marjorie's neurologist, Dr. Donald Friedenberg, testified that Marjorie did not have the capacity to execute the mortgage, and further, that she was not competent to execute the transfer on death deed back to Richard and Jill in 2002. The partition action was stayed, and appellant filed suit for declaratory judgment in the probate court to determine the validity of the transfer on death deed. The probate court entered a declaratory judgment that the transfer on death deed to Richard and Jill was invalid and that they did not

acquire any legal or equitable interest in the property. The probate court further determined that ownership in the property vested with appellant on Marjorie's death.

{¶ 8} Thereafter, the complaint in the instant matter was filed to reopen the estate to report the Clark State Road property as a newly discovered asset, modifying the estate inventory and schedule of assets in order to sell the Clark State Road property. The probate court entered judgment that appellee had first priority for any proceeds realized from the sale of the Clark State Road property. Appellant now appeals.

## II. Assignments of Error

{¶ 9} In this appeal, appellant challenges the decision to give appellee first priority, along with the earlier judgment that he was not entitled to the allowance for support. His assignments of error are:

> I. The trial court erred when it ruled that John Severing was not entitled to the Allowance for Support.
>
> II. The trial court erred when it ruled that Marjorie H. Bradburn's interest in the property located at 6125 Clark State Road was encumbered by the Bank of America mortgage.

These decisions of the probate court involve questions of law that we review de novo. *Bank One Trust Co. v. Scherer,* 176 Ohio App.3d 694, 2008-Ohio-2952, ¶ 9 (10th Dist.), citing *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh,* 129 Ohio App.3d 255, 261 (4th Dist.1998).

### A. First Assignment of Error

{¶ 10} R.C. 2106.13(A) provided appellant, the surviving spouse, with a $40,000 allowance for support, as there were no minor children. The trial court treated the spousal allowance as a lien against the assets passing under Marjorie's will, holding that when appellant took title to the North High Street property in fee simple, the owner of the allowance acquired what he was entitled to. The probate court characterized the transaction as "a merger extinguishing the lien except where an intent to the contrary is shown or where such a merger is against the interest of the owner of both estates." *Kaczenski v. Kaczenski*, 118 Ohio App. 225, 228 (7th Dist.1962), quoting 53 Corpus Juris Secundum, Liens, Section 17(5), at 865 (1948). In short, the court further determined that when appellant took title to the North High Street property, he could have sold it to realize the $40,000 spousal allowance. When appellant decided to hold the property at

the first closure of decedent's estate, the probate court found that he waived his right to claim the allowance.

{¶ 11} "Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *Glidden Co. v. Lumbermans Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 49. While the provision made for the benefit of the surviving spouse could be waived, "such waiver must clearly appear." *Stetson v. Hoyt*, 139 Ohio St. 345, 348 (1942). In *Stetson*, the Supreme Court of Ohio held that under the predecessor state statute to R.C. 2106.13(A), that is, section 10509-54 of the General Code, "the administrator of a surviving spouse is entitled to a lien upon the real property of her predeceased spouse for the balance in money over the appraised value of the personal property of such predeceased spouse selected by such surviving spouse in her lifetime, so as to make up the maximum allowance under the statute even though no further selection has been made by such surviving spouse." *Id.* at syllabus.

{¶ 12} The distribution of funds pursuant to R.C. 2106.13(A) is mandatory and given regardless of whether the surviving spouse takes under the will; however, this right may be waived by the surviving spouse. *In re Estate of Earley*, 4th Dist. No. 00CA34 (Aug. 24, 2001). In *Estate of Earley*, the surviving spouse, also the executor, applied to the probate court for a certificate of transfer of the decedent's interest in real property to grandsons in accordance with the decedent's will. She selected and marked the box on the application form which indicated that the decedent's known debts were paid or secured to be paid. She then applied for the $40,000 statutory allowance, but the bulk of the estate had been depleted by transfer of the real property. As the executor, she moved to rescind or annul the certificate of transfer for the real estate, and she alleged that she had not been aware of her right to the allowance for support. She claimed that her attorney failed to properly apprise her of the law. Insofar as any mistake was made by the party and not by the court, the Fourth District upheld the court's decision not to vacate the transfer, and further, that the executor who was also the surviving spouse effectively had waived her right to the family allowance provided by R.C. 2106.13.

{¶ 13} In its judgment entry the court below observed the traditional purpose of the allowance—to support the widowed spouse and the remaining children during the

year in which the executor may retain estate assets awaiting the presentation of debts against the estate. *Collier v. Collier's Exrs.*, 3 Ohio St. 369, 376 (1854); *In re Metzger's Estate*, 140 Ohio St. 50, 52 (1942). Appellant did not raise his intention to take the spousal allowance from the proceeds of the Clark State Road property when he initially moved to sell it. The probate court did not permit him to claim the allowance seven years after his spouse's death when he undertook the sale of the Clark State Road property before appellee's mortgage lien was satisfied. We find ample evidence to support the trial court's finding of waiver and agree with its conclusion that allowing appellant to receive priority distribution based on R.C. 2106.13(A) before the mortgage lien would create an unjust result. The first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 14} Appellee suggests that the late claim for the support allowance became a default position for appellant when it became apparent that appellant would not likely succeed in his claim that appellee's mortgage lien was limited only to a one-third interest in the Clark State Road property. In the May 9, 2007 affidavit of transfer for the Clark State Road property refinance closing, appellant recited decedent's interest as one-half, but Marjorie had acquired one-third of the property by quitclaim deed prior to her marriage to appellant. The purported transfer on death deed of March 14, 2002 conveyed Richard's and Jill's two-thirds interest in the property to appellant and Marjorie. In appellant's declaratory judgment action, the probate court invalidated the transfer on death back to Richard and Jill.

{¶ 15} The probate court held that, because appellant admittedly forged his incompetent wife's name on the 2007 mortgage document, he was estopped to deny the validity of the mortgage as against his deceased wife's interest in the property. *See Std. Sanitary Mfg. Co. v. George*, 118 Ohio St. 564 (1928) (mortgagor who executed mortgage deed under duress of her husband, which duress was unauthorized by and unknown to her mortgagee, and who thereafter silently and knowingly permitted her mortgagee to extend credit to her husband or her husband's firm, upon the faith of such mortgage, was estopped from challenging the validity of her execution thereof to the extent such credit was extended on the faith of the mortgage); *Kraig v. Hughes*, 11 Ohio Dec. 662 (Super.Ct. 1901) (plaintiff who advised loan and building company, before it made mortgage, that

plaintiff was owner of real estate purchased in defendant's name but acquiesced in transfer of loan from building association to the loan and building company, was estopped by acquiescence to claim that the mortgage should be cancelled); 69 Ohio Jurisprudence 3d, Mortgages, Section 46, at 103 (2013) ("The right to assert that a mortgage is invalid may be lost by acts or omissions constituting an estoppel.  Accordingly, a person who participates in the very acts which are relied on to invalidate the mortgage may be estopped to deny its validity.").

{¶ 16} In *Conover v. Porter,* 14 Ohio St. 450 (1863), the plaintiff husband, along with his wife, executed a blank deed to convey a small parcel of land to a school district for a school building site.  However, without his wife's knowledge, the husband completed the deed as a mortgage to secure a $4,000 loan.  The Supreme Court held that the husband alone was precluded by estoppel in pais from denying the validity of the mortgage.  "[T]o permit him to do so, would be permitting him to take advantage of his own wrong.  He is not now at liberty to assert the truth as against one who has parted with money on the faith of his falsehood. It is an estoppel *in pais,* and is equally effectual in law and in equity." *Id.* at 454.

{¶ 17} Having previously found that it was necessary to sell the Clark State Road property under R.C. 2127.04, the probate court proceeded to "determine the equities among the parties and the priorities of lien of the several lien holders on the real property, and order a distribution of the money arising from the sale in accordance with its determination." R.C. 2127.18.  R.C. 2127.38 provides in pertinent part:

> The sale price of real property sold following an action by an executor, administrator, or guardian shall be applied and distributed as follows:
>
> * * *
>
> (B) To the payment of taxes, interest, penalties, and assessments then due against the real property, and to the payment of mortgages and judgments against the ward or deceased person, according to their respective priorities of lien, so far as they operated as a lien on the real property of the deceased at the time of the sale, or on the estate of the ward at the time of the sale, that shall be apportioned and determined by the court, or on reference to a master, or otherwise[.]

{¶ 18} In the matter under review, pursuant to R.C. 2127.38, the probate court ordered that, after the costs of the land sale, taxes, interest, penalties and assessments, appellee would take first priority in the amount of $162,573.56, together with interest at the rate of 6.625 percent from April 1, 2009, plus costs, against the entire fee interest of the Clark State Road property. Any remaining proceeds were to be allocated two-thirds to the estate, and one-third to Westport Recovery Corporation,[1] which had filed a judgment lien against appellant in the principal amount of $11,080.37, with interest at the annual rate of 10 percent from July 8, 1998, plus costs.

{¶ 19} Appellant maintains that the mortgage could not be valid because decedent lacked the mental capacity to execute the documents. Decedent did not sign the mortgage documents on her own; rather, appellant testified at his deposition, he put the pen in her hand and signed her name, he said, because the notary conducting the closing had asked for her signature. Appellant relied on Dr. Friedenberg's testimony in the partition lawsuit that Marjorie had not been competent either to sign the mortgage document on February 16, 2007, or to execute the transfer on death deed in 2002.

{¶ 20} Appellant asserts that because decedent never signed the mortgage documents, the mortgage is unenforceable as to her interest in the property. He further argues that the doctrine of equitable estoppel could not be used to enforce a mortgage decedent did not sign. Appellant claims that the findings of fraudulent conduct on his part cannot be sustained due to the lack of evidence that the mortgagee relied on appellant's conduct to its detriment. According to the probate court, appellant was estopped from denying the validity of the mortgage insofar as he engaged in fraudulent conduct by admittedly forging decedent's name on the loan documents. Yet, appellant shifts knowledge and blame to the notary as the lender's agent, asserting that the notary acquiesced in appellant's actions to create a signature purporting to be that of Marjorie and that this prevents satisfaction of appellee's claim.

{¶ 21} The probate court decided:

---

[1] On November 9, 2009, Westport Recovery Corporation requested a certificate of judgment lien in the Franklin County Court of Common Pleas, case No. 09-JG-11-46477. As assignee of a domesticated Florida judgment obtained by First Union National Bank of Florida against John Severing and others, Westport asserted a lien on all properties owned by John Severing in Franklin County, Ohio, pursuant to R.C. 2329.02.

> With the exception of indicating that the broad purpose of the doctrine of equitable estoppel is to prevent fraud and to promote the interest of justice, the plaintiff is left only with trying to justify his own fraudulent conduct. With respect to Bank of America's mortgage lien, John Severing seeks to limit its lien only to his 1/3 interest in the subject property, and not to the decedent's 2/3 interest which he would like to go to the estate and be distributed pursuant to the decedent's last will and testament. This would allow Mr. Severing to benefit from his own fraudulent act as he is the sole beneficiary of the estate.

> John Severing is, in fact, estopped from denying Bank of America's mortgage interest in the entirety of the property because regardless of whether he was acting [as] executor or in his individual capacity, he engaged in fraudulent conduct by admittedly forging the decedent's name on the loan documents, and thereby inducing Bank of America to make the loan.

(Judgment Entry, 7-8.) Clearly, adjudication of civil fraud was not essential to the court's determination of appellee's claim of equitable estoppel. "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990).

{¶ 22} The crux of appellant's argument against estoppel is that the party claiming estoppel must have relied on the adversary's conduct "in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Id.* Appellant argues that the notary acted as the lender's agent and was therefore complicit in securing decedent's forged signature on the loan documents. Appellant argues this as evidence that the lender had knowledge that appellant's conduct was misleading, thus barring equitable estoppel.

{¶ 23} Appellant cites R.C. 1335.04 (the statute of frauds) and R.C. 5301.01(A) in support of a requirement for a duly signed and acknowledged mortgage before it may be enforceable. We note the well-established law that "[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud." *Citizens Natl. Bank in Zanesville v. Denison,* 165 Ohio St. 89, 95 (1956). Appellant did not plead and prove fraud on the lender's part, but contended that the mortgage cannot be

valid as against Marjorie's interest in the property by operation of law. We agree with the probate court that appellant is barred in equity from challenging the validity of a mortgage he procured under false pretenses.

{¶ 24} While the relationship between the notary and the original lender, America's Wholesale Lender, does not appear to have been explicated in the trial court, the notary's alleged failure to witness the act of placing Marjorie's signature on the refinancing documents is a subject best addressed by Ohio laws for notaries public found in R.C. Chapter 147. We find no error in the probate court's application of equitable estoppel. We further note that appellant's conduct may have also been addressed by the doctrine of unclean hands. In our review of the probate court's decision, we find that, because it was appellant, himself, who committed the act of forging Marjorie's signature on the mortgage documents, his retrospective efforts to void the mortgage and obviate the resulting transmission of funds, to the extent of Marjorie's two-thirds interest in the Clark State Road property, would be barred by the doctrine of unclean hands.

{¶ 25} We also find appellant's claim, pursuant to R.C. 2127.08, that two-thirds of the net sale proceeds was required to be paid to the estate regardless of appellee's mortgage lien, to be inapposite. That statute provides as follows:

> When the interest of a decedent or ward in real property is fractional and undivided, the action for authority to sell the real property shall include only the undivided fractional interest, except that the executor, administrator, or guardian, the owner of any other fractional interest, or any lien holder may, by pleading filed in the cause setting forth all interests in the property and liens on the property, require that the action include the entire interest in the property, and the owner of the interests and liens shall receive the owner's respective share of the proceeds of sale after payment has been made of the expenses of sale including reasonable attorney fees for services in the case. Those fees shall be paid to the plaintiff's attorney unless the court awards some part of the fees to other counsel for services in the case for the common benefit of all the parties, having regard to the interest of the parties, the benefit each may derive from the sale, and the equities of the case. The fees of the executor, administrator, or guardian shall be a charge only against the portion of the proceeds of sale that represents the interests of the decedent or ward.

R.C. 2127.08.  This section enables the executor, administrator, or guardian, the owner of any other fractional interest, or any lien holder to file a pleading in the action for a sale of a decedent's fractional and undivided interest, and seek the sale of the entire interest in the property.  Since appellant by his conduct is barred from challenging the validity of appellee's mortgage lien concerning decedent's interest in the property, appellee is entitled to claim its share of the proceeds of sale of the entire Clark State Road property, after payment of expenses of sale including reasonable attorney fees, in accordance with R.C. 2127.08.  The second assignment of error is overruled.

{¶ 26}  Having overruled each of the assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

BROWN, P.J., and HORTON, J., concur.

————————————